UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

RAFAEL GARCIA-ARREDONDO,

                    Defendant.

NO. CR-11-2042-EFS

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

     A pretrial conference occurred on May 11, 2011, in Yakima, Washington.  Defendant Rafael Garcia-Arredondo was present, represented by Alison Guernsey.  Alison Gregoire appeared on the United States Attorney's Office's (USAO) behalf.  Before the Court was Defendant's Motion to Dismiss Indictment (ECF No. 49).  After reviewing the submitted materials and relevant authority and hearing oral argument, the Court was fully informed and denied Mr. Garcia-Arredondo's motion.  This Order memorializes and supplements the Court's oral rulings.

                    **I. Background**

     In 1962 and at the age of seven, Mr. Garcia-Arredondo came to the United States with his parents as a legal permanent resident ("LPR").  (ECF No. 50-1, Ex. A.)  Settling in Washington, Mr. Garcia-Arredondo grew up like many American children, earning his GED and attending college.  *Id*. Ex. B.  He married a U.S. citizen and fathered

ORDER * 1

three children.  He could have naturalized, but never filled out the paperwork.  In the 1980s, Mr. Garcia-Arredondo began getting into trouble with the law and in 1999, was placed in removal proceedings after being convicted of violating a no-contact order.  *Id.* Ex. C.

On May 26, 1999, Mr. Garcia-Arredondo appeared pro se before an Immigration Judge (IJ) in Seattle, Washington.  *Id.* Exs. D & E.  During the hearing, Mr. Garcia-Arredondo told the IJ that he did not believe he was removable for violating a protection order.  *Id.*  The IJ informed Mr. Garcia-Arredondo that "a violation of a protective order is a removable offense."  *Id.*  Hearing this, Mr. Garcia-Arredondo then conceded his removability.  *Id.*  The IJ advised Mr. Garcia-Arredondo of the relief for which he was eligible:

> THE COURT: As I told you earlier, sir, for this offense at this time you are still eligible for cancellation of removal.  Do you wish to apply for that relief?
>
> MR. GARCIA-ARREDONDO: I just, ma'am, don't want to be locked up forever.  Trying to fight this thing.  And if it's a lost cause, ma'am, I just –
>
> THE COURT: I don't know if it is, sir, until I hear the evidence.  So you have a right to ask for that relief.  You also have a right to say, well, I don't want it.  I just want to leave.
>
> MR. GARCIA-ARREDONDO: I know that, uh, everything [unintelligible] on paper [unintelligible] always necessary [unintelligible] I made a lot of bad choices and decisions [unintelligible] versus what's on paper, what I've been charged with.
>
> THE COURT: Well, its up to you, sir.  You have to tell me whether you want to apply for the relief or whether you want to not apply for the relief and just want to go back.
>
> MR. GARCIA-ARREDONDO: If I [unintelligible] voluntarily, this will be over, right?
>
> THE COURT: If you are asking me for voluntary departure at this time I will grant it to you since you have not been charged with an aggravated felony.

ORDER * 2

1    MR. GARCIA-ARREDONDO: Okay.

2    THE COURT: But you must give up your right to apply for the
     relief that you are entitled to.
3
     MR. GARCIA-ARREDONDO: Right, I give up my rights then.
4
         . . .
5
     THE COURT: I'll grant you voluntary departure by May 28th,
6    1999.  I want the record to be clear that I have informed you
     that you are eligible for cancellation of removal, and you
7    voluntarily give up that relief; is that right, sir.

8    MR. GARCIA-ARREDONDO: Yes, that's right.

9   *Id*. Ex. D, at 5-7; Ex. E.  Mr. Garcia-Arredondo accepted pre-hearing

10  voluntary departure in lieu of applying for cancellation of removal and

11  returned to Mexico.  *Id*. Ex. G.

12      Mr. Garcia-Arredondo reentered the United States and was found by

13  immigration authorities in 2002; a 2002 Notice to Appear (NTA) alleges

14  that he entered the United States <u>without inspection</u> following his 1999

15  voluntary departure.  *Id.* Ex. H.  On November 15, 2002, Mr. Garcia-

16  Arredondo appeared before an IJ and requested a continuance to obtain

17  counsel, *id*. Exs. I & J, and subsequently retained Kaaren L. Barr to

18  represent him.  *Id*. Exs. G & K. On November 22, 2002, Mr. Garcia-

19  Arredondo again appeared before an IJ, this time represented by Ms. Barr.

20  At the hearing, Ms. Barr learned of Mr. Garcia-Arredondo's 1999 removal

21  proceedings and his previous LPR status.  She also learned that, despite

22  his apparent eligibility for cancellation of removal, Mr. Garcia-

23  Arredondo did not pursue that relief at the 1999 hearing.  *Id*. Ex. M.

24  When asked why he did not, Defendant stated he "didn't know anything

25  about it."  *Id*. Ex. J.  Accordingly, Ms. Barr moved for a continuance "to

26  see what happened at the prior hearing because . . . he would have been

    eligible for cancellation of removal."  *Id*. Ex. M, at 9.  The Government

opposed the continuance.    The IJ denied Mr. Garcia-Arredondo's continuance request and granted him voluntary departure:

> The Court has concluded that this type of collateral attack is highly speculative.    That is to say there's absolutely no evidence including any testimony from the respondent to indicate that he was not treated fairly at the 1999 hearing. Therefore, it appears to be nothing more than wishful thinking at this point and the Court, noting that the respondent is detained, does not feel there is good cause for a continuance at this time.    However, counsel for the respondent has indicated that the . . . Court's decision in this matter will be appealed, therefore, there will be time during the appellate process to investigate this prior hearing.    And if it is determined that he did not receive a fair hearing, a motion for remand could be filed with the Board of Immigration Appeals. Therefore, the Court finds that the respondent . . . is not unduly prejudiced by the denial of the continuance. Accordingly, the continuance will be denied.

*Id.* at 14-15.  Mr. Garcia-Arredondo reserved the right to appeal; the IJ set a notice-of-appeal deadline for December 23, 2002.    Mr. Garcia-Arredondo maintains that he told Ms. Barr that he wanted to appeal the IJ's denial of the continuance request to help fix his immigration status.    *Id.* Ex. G, ¶ 22.    No appeal was filed.    One week after the deadline for filing an appeal had passed, Mr. Garcia-Arredondo was removed.  *Id.* Ex. N.

In 2007, Mr. Garcia-Arredondo was again deported via a reinstatement of the 2002 order.  Id. Ex. O.

On February 8, 2011, Mr. Garcia-Arredondo was indicted in this Court on one count of being an alien in the United States following deportation, in violation of 8 U.S.C. § 1326.    (ECF No. 14.)    The Indictment is based on an April 21, 2007 removal date, which was a reinstatement of the IJ's 2002 removal order.    *Id.*

//

/

ORDER * 4

## II. Analysis

Under 8 U.S.C. § 1326(a), an alien is criminally liable if he is found in the United States after he "has been denied admission, excluded, deported, or removed," without consent of the Attorney General or other advance consent. "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc).

To collaterally attack an underlying removal order, a defendant must demonstrate: 1) he exhausted administrative remedies, 2) the deportation proceedings deprived him of the opportunity for judicial review, and 3) the deportation was fundamentally unfair. 8 U.S.C. § 1326(d). A deportation is fundamentally unfair if 1) the defendant's "due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects." *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (quoting *United States v. Palares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)); *see generally United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). If the defendant can so prove, then the deportation stemming from the defective proceedings may not be used to prove the defendant violated § 1326. *Id.*

Mr. Garcia-Arredondo asks the Court to dismiss the § 1326 Indictment against him because the 2007 deportation named in the Indictment – a reinstatement of the 2002 deportation for entry without inspection – relies on immigration proceedings that violated Mr. Garcia-Arredondo's due process rights. Specifically, Mr. Garcia-Arredondo

ORDER * 5

argues: 1) the 2002 deportation depended on the 1999 action; the 1999 action was defective because the IJ failed to adequately advise Mr. Garcia-Arredondo he was eligible for certain relief, and 2) the 2002 hearing was defective in its own right because he received ineffective assistance of counsel. Mr. Garcia-Arredondo argues that he was prejudiced by these defects because he could not apply for cancellation of removal, thereby possibly avoiding the deportation order that underlies the instant offense.

A. The Indictment Does Not Rely on the 1999 Deportation Hearing

Mr. Garcia-Arredodo argues, had he not lost his LPR status in the 1999 IJ hearing, he would not have been deportable for entering without inspection in 2002, the offense which forms a basis for the Indictment. But the 2002 deportation contained no allegation that Mr. Garcia-Arredondo had been previously deported or anything comparable; rather, the 2002 NTA alleges he was an alien present in the United States without being admitted or paroled, in violation of 8 U.S.C. § 212(a)(6)(A)(i).[1] *Id*. Ex. H. Thus, even if Mr. Garcia-Arredondo were able to go back to the 1999 hearing, apply for and receive cancellation of removal, and keep his LPR status, he would still be guilty of the conduct alleged in the 2002 removal proceedings because a defendant with LPR status is still deportable if he enters without inspection. *See Matter of Ruis*, 18 I. & N. Dec. 320, 320-22 (B.I.A. 1982). Mr. Garcia-Arredondo counters he would not have entered the United States without inspection because he

---

[1] Defendant does not suggest that he has a defense to the allegation of having entered without inspection.

never would have left.  The Court will not speculate as to Mr. Garcia-Arredondo's intentions; the fact remains that Mr. Garcia-Arredondo voluntarily departed from the United States in 1999. He could have waited five years and reapplied for admission.  Instead, he surreptitiously reentered the United States without inspection. Accordingly, Mr. Garcia-Arredondo's 2002 deportation for failure to submit to inspection did not depend on the 1999 proceeding at which he waived cancellation of removal and voluntarily departed from the United States, regardless of whether that 1999 proceeding violated due process.

B.   <u>The 1999 Deportation Hearing Did Not Violate Due Process</u>

Having concluded that the Indictment does not rely on the 1999 proceedings, the Court need not address whether those proceedings were procedurally defective.  Nevertheless, the Court briefly addresses the merits.  Mr. Garcia-Arredondo contends the 1999 proceedings violated his due process rights because the IJ 1) pressured him into not contesting his removability; 2) failed to explain the significance of applying for cancellation; 3) failed to inform him about the showing required to apply for cancellation; and 4) misinformed him about his eligibility for voluntary departure.

Due process requires that an IJ inform an alien of his "apparent eligibility" for relief.  *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001) (citing 8 C.F.R. § 1240.49(a) ("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for . . . [relief from deportation]."));  *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (holding that "the IJ must adequately explain the hearing procedures . . . , including what [an alien] must prove to

establish his basis for relief" when an alien is proceeding pro se). "'Apparent eligibility' is a reasonable possibility that the alien may be eligible for relief." *Bui v. INS*, 76 F.3d 268, 270-71 (9th Cir. 1996).

A review of the record shows that Mr. Garcia-Arredondo was repeatedly advised that he was eligible for cancellation of removal or that he could waive that relief and seek voluntary departure. As a thirty-year LPR with three U.S.-citizen children and no aggravated felonies, Mr. Garcia-Arredondo was a candidate for cancellation of removal. 8 U.S.C. § 1229b(a). Indeed, the IJ informed Mr. Garcia-Arredondo that he was so eligible, and offered him the opportunity to apply for that relief, or in the alternative, to leave the United States voluntarily.

Mr. Garcia-Arredondo, who had then been a college student in the United States, argues that the IJ erred by not informing him of the difference between "pre-hearing" voluntary departure, which must be granted prior to an individual's first merits hearing, *see* 8 C.F.R. § 1240.26(b)(1)(ii), and "post-hearing" voluntary departure, which is granted at the conclusion of an individual's removal hearing, *id*. § 1240.26(c). To receive pre-hearing voluntary departure, an alien must waive his right to appeal, concede removability, and withdraw other requests for relief to receive a grant of pre-hearing voluntary departure. *Id*. § 1240.26(b)(1)(i)(B)-(D). The IJ correctly informed Mr. Garcia-Arredondo of pre-hearing voluntary departure. She did not, however, inform him about post-hearing voluntary departure which, unlike pre-hearing voluntary departure, requires a finding of both good moral

character and physical presence in the United States for the year preceding the service of the Notice to Appear. *Id*. § 1240.26(c)(1)(i)-(ii). But because Mr. Garcia-Arredondo had convictions for second degree robbery (1986), second degree assault (1996), and violation of a no-contact order (1999) (precluding a finding of good moral character) there was not a reasonable possibility that Mr. Garcia-Arredondo was eligible for that relief. Mr. Garcia-Arredondo concedes this point.[2] (ECF No. 59, at 5.)

At the 1999 hearing, Mr. Garcia-Arredondo had two options: he could 1) accept pre-hearing departure, forgo cancellation of removal, immediately depart, and seek lawful entry at a later date, or 2) pursue cancellation of removal, remain incarcerated pending a merits hearing, and, at the conclusion of that hearing, pursue post-hearing voluntary departure (for which he was ineligible due to previous convictions). He chose voluntary departure. The Court concludes the IJ adequately informed Mr. Garcia-Arredondo of all relief for which he was apparently eligible in 1999 and the colloquy was adequate for an LPR with some college education to make a considered and intelligent choice.

C. <u>The 2002 Deportation Hearing Did Not Violate Due Process</u>

Mr. Garcia-Arredondo argues the Indictment should be dismissed because Ms. Barr ineffectively assisted him at the 2002 hearing, which

---

[2] Furthermore, it is unlikely that Mr. Garcia-Arredondo would have pursued post-hearing voluntary departure: he clearly indicated that he did not want to be "locked up" awaiting a merits hearing on whether he was entitled to cancellation of removal.

violated his due-process rights.  Mr. Garcia-Arredondo argues that Ms. Barr's failure to appeal the IJ's 2002 order denying Mr. Garcia-Arredondo's continuance request denied him the opportunity for meaningful judicial review of the 1999 proceedings.  *See United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003) ("Deprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel . . . .").

In removal proceedings, "the proper focus of [the court's] inquiry is whether the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case."  *Torres-Chavez v. Holder*, 567 F.3d 1096, 1100 (9th Cir. 2009).  An alien must also show substantial prejudice by showing "the alleged violation affected the outcome of the proceedings."  *Id.* (quoting *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004)).  Courts begin with the *Strickland v. Washington* analysis: "[i]f an attorney's performance passes muster under *Strickland*, it cannot render an alien's proceeding unfair."  *Id.*  Under *Strickland*, the Court must: 1) determine whether counsel's representation "fell below an objective standard of reasonableness"; and 2) ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. 668, 688 (1984).

Mr. Garcia-Arredondo assumes that it was counsel's error that prevented him from filing an appeal, while the USAO claims that Ms. Barr likely saw that an appeal would be meritless and thus strategically decided not to file one.  The Court will not speculate as to Ms. Barr's motives in failing to appeal the IJ's continuance denial.  But the Court

need not address the first *Strickland* prong because Mr. Garcia-Arredondo cannot meet the second prong: even assuming Ms. Barr unprofessionally erred in failing to appeal or notify Mr. Garcia-Arredondo of his failure to do so, he cannot show he was prejudiced by this error.  While the failure to appeal may have deprived Mr. Garcia-Arredondo of meaningful review of the 1999 record, *see Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000) (holding that where an individual is "prevented from filing an appeal in an immigration proceeding due to counsel's error" counsel's actions are ineffective and presumptively prejudicial), he cannot show that this lack-of-review prejudiced him during the 2002 proceedings.  As set forth above, his decision to return without inspection after voluntarily departing from the United States remains unaffected by any due-process violations during the 1999 hearing.  Mr. Garcia-Arredondo was not precluded from reasonably challenging[3] the 2002 immigration charge of entering without inspection because the 2002 proceedings did not depend on the 1999 voluntary departure.

Accordingly, **IT IS HEREBY ORDERED:**  Defendant's Motion to Dismiss Indictment **(ECF No. 49)** is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter

////

///

//

/

---

[3]  Mr. Garcia-Arredondo does not suggest he had a defense to the allegation of having entered without inspection and does not cite to any substantive error with the 2002 deportation.

ORDER * 11

this order and to provide copies to counsel.

**DATED** this  11th  day of May 2011.


                          s/Edward F. Shea
                         EDWARD F. SHEA
                   United States District Judge


Q:\Criminal\2011\2042.dismiss.1326.indict.wpd

ORDER * 12